Submitted May 27, 2014, affirmed March 18, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN MICHAEL STONE,
*Defendant-Appellant.*

Jackson County Circuit Court
114624FE; A152000

346 P3d 595

Peter Gartlan, Chief Defender, and Stephanie J. Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Mooney, Judge pro tempore.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Defendant appeals a judgment of conviction for unlawful possession of marijuana, arguing that the trial court erred in denying his motion to suppress. An officer found defendant in a parking lot, observed that he was intoxicated, and decided to take him to a detoxification center. While still standing in the parking lot, the officer told defendant that he would be handcuffed and transported to "detox," and he asked defendant if he had anything that he was not supposed to have. Defendant responded that he had "weed" in his backpack, which the officer later found pursuant to a consent search. On appeal, defendant argues that, contrary to the trial court's conclusion, the officer was required to give him *Miranda* warnings because he was questioned in compelling circumstances for purposes of Article I, section 12, of the Oregon Constitution.[1] For the reasons that follow, we conclude that the trial court properly rejected that argument and denied defendant's motion. Accordingly, we affirm.

We state the facts consistently with the trial court's factual findings and its decision denying defendant's motion to suppress. *State v. Shaff*, 343 Or 639, 641, 175 P3d 454 (2007). On July 30, 2011, an officer on patrol first saw defendant sitting in a Wal-Mart parking lot at around 7:00 p.m. When the officer later saw defendant walking his bicycle across the parking lot, he observed that defendant "had an overall drunk like appearance": He was having balance issues, he had a flushed complexion and disheveled look, and he was bleeding from abrasions on his elbows that appeared to be "road rash" from having fallen down.

The officer decided to perform a welfare check because he was worried that defendant might decide to cross a busy, four-lane highway nearby. Upon making contact with defendant, the officer noticed that he smelled of alcohol

---

[1] Article I, section 12, provides, in part, that "[n]o person shall * * * be compelled in any criminal prosecution to testify against himself." That provision "is an independent source for warnings similar to those required under the Fifth Amendment to the United States Constitution, as described in *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966)." *State v. Shaff*, 343 Or 639, 641 n 1, 175 P3d 454 (2007). The Fifth Amendment provides, in part, that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself[.]"

and that his speech was slurred. Defendant told the officer that he was walking his bike to his home, which was not far away.

The officer decided to take defendant to a detoxification center in Medford. At the officer's request, defendant provided his identification. When the officer asked about his condition, defendant explained that he had drunk "too much to be riding his bike" and that he was bleeding because he had been "X-Gaming" on his bike, which the officer understood to mean "extreme sports." At that point, in the officer's view, defendant would not have been free to retrieve his possessions and leave.

The officer asked defendant to put down his bike and the backpack defendant was wearing, though the officer told him that he could finish his cigarette. Defendant asked the officer if he would be handcuffed, and the officer responded that defendant "would be because [the officer] was taking him to detox." As defendant was finishing his cigarette, the officer asked defendant a series of questions:

"[Officer]: Do you have anything you're not supposed to have?

"[Defendant]: Yeah.

"[Officer]: What is it?

"[Defendant]: Weed.

"[Officer]: How much?

"[Defendant]: One ounce."[2]

The officer then asked defendant where the "weed" was. Defendant said that it was in his backpack and began to reach for the backpack. The officer stopped defendant because the officer was concerned for his safety. Defendant ultimately gave oral and written consent to allow the officer to search the backpack.

The officer handcuffed defendant and placed him in the patrol car, but did not ask him any other questions. He

---

[2] Although there is no recording or transcription of the officer's conversation with defendant, we quote the trial court's order, which reflects the officer's testimony.

searched the backpack and discovered what he thought was less than one ounce of marijuana. The officer took defendant to the detoxification center and later determined that the quantity of marijuana was 1.57 ounces.

After being charged with unlawful possession of marijuana, defendant moved to suppress his answers to the officer's questions and the marijuana found in his backpack under various state and federal constitutional provisions, including Article I, section 12, and the Fifth Amendment to the United States Constitution.[3] He argued that he should have been given *Miranda* warnings before the officer asked, "Do you have anything you aren't supposed to have?" because that question was asked while defendant was in custody or compelling circumstances. The circumstances were compelling, in defendant's view, because he was told he would be handcuffed and taken to "detox," and defendant could appreciate that he was not free to leave. Defendant argued that, at that point, the circumstances were "different than a stop" because the officer had said, "I'm taking you somewhere." He further asserted that the officer's question was designed to elicit, and did provoke, an incriminating response. In response, the state acknowledged that the officer's question "elicited a statement that was incriminating," but argued that defendant was not in a custodial setting or in compelling circumstances because "[t]his [was] a civil detox hold," defendant was not in handcuffs, there were no guns drawn, and there was only one officer present at the time of questioning.

The trial court denied defendant's motion, concluding that, although defendant was not free to leave, *Miranda* warnings were not required because defendant was not in custody or in compelling circumstances:

> "Because this was a relatively brief encounter during daylight hours in a public place where Defendant's admissions occurred in a non-coercive conversation between [him] and the officer, I find that he was not entitled to *Miranda* warnings prior to that verbal exchange. Further, because

---

[3] Defendant did not dispute that the officer had authority to transport him to a detoxification facility. *See* ORS 430.399(1) ("Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police.").

there was really no evidence that the subsequent search of the backpack was anything but voluntary, I find that the search was not unlawful."

Defendant entered a conditional guilty plea, reserving an appellate challenge to the trial court's ruling.

On appeal, defendant reprises his argument, under Article I, section 12, that, because he was questioned in compelling circumstances, he should have been given *Miranda* warnings, and the failure to give those warnings required suppression of his statements and the marijuana found in his backpack.[4] To protect a person's right against compelled self-incrimination, Article I, section 12, requires that, "before questioning, police must give *Miranda* warnings to a person who is in full custody or in circumstances that create a setting which judges would and officers should recognize to be compelling." *State v. Roble-Baker*, 340 Or 631, 638, 136 P3d 22 (2006) (internal quotation marks omitted). Whether a defendant was in compelling circumstances is a question of law that "turns on how a reasonable person in the [defendant's] position would have understood his or her situation." *Shaff*, 343 Or at 645. In making that determination, we examine the totality of the circumstances, including "(1) the location of the encounter—that is, whether the venue was familiar to the suspect or subject to police control; (2) the length of the encounter; (3) the amount of pressure exerted on the defendant, including, *e.g.*, officers' affect and whether officers confronted the suspect with evidence of guilt in a coercive manner; and (4) the defendant's ability to terminate the encounter." *State v. Northcutt*, 246 Or App 239, 246, 268 P3d 154 (2011) (internal quotation marks omitted). With those considerations as our guide, the "overarching inquiry is whether the officers created the sort of police-dominated

---

[4] We consider whether *Miranda* warnings were required only under Article I, section 12, because defendant does not develop a separate argument under the cases interpreting the Fifth Amendment. *See, e.g., State v. Thompson*, 328 Or 248, 254 n 3, 971 P2d 879, *cert den*, 527 US 1042 (1999) (explaining that court would not address constitutional claims in the absence of "thorough and focused constitutional analysis"); *State v. Kinkade*, 247 Or App 595, 599, 270 P3d 371 (2012) (declining to address Fourth Amendment claim where the defendant made "passing reference in his opening brief to the Fourth Amendment to the United States Constitution" but did not develop a "separate argument under the federal constitution").

atmosphere that *Miranda* warnings were intended to counteract." *Roble-Baker*, 340 Or at 641.

Relying on that framework, defendant acknowledges that the encounter was not particularly lengthy and occurred in a public parking lot rather than a stationhouse subject to police control. But he emphasizes that he was not free to leave and that the officer "exerted pressure on [him] by questioning him regarding illegal activity." He asserts that "the character of the question [as to whether defendant had anything he should not have] transformed the nature of the encounter from a welfare check into compelling circumstances." Alternatively, defendant argues that the circumstances became compelling once defendant admitted that he was in possession of an ounce of marijuana, which defendant describes as an admission that "he was in the process of committing a felony." The state responds that there is no legal support to the view that "noncompelling circumstances are rendered compelling * * * if either of two things occurs during a suspect's interaction with a police officer: the officer asks the suspect about possible criminal activity or the suspect admits to a crime."

To determine whether particular questioning creates compelling circumstances under Article I, section 12, our concern is with "the use of aggressive and coercive police interrogation practices, especially including, but not limited to, those explicitly predicated on assumption of a suspect's guilt or calculated to contradict a suspect's assertions of innocence." *Northcutt*, 246 Or App at 250. Contrary to defendant's claim, the officer's question here, which merely suggested that he was concerned about possible "illegal activity," did not meet that threshold.

To start with, the Supreme Court has counseled that "the fact that police question a person as a suspect in a crime 'does not inherently create a "compelling" setting for Oregon constitutional purposes.'" *State v. Carlson*, 311 Or 201, 205, 808 P2d 1002 (1991) (quoting *State v. Smith*, 310 Or 1, 11, 791 P2d 836 (1990)) (concluding that compelling circumstances did not result merely because an officer, in the course of responding to a report of a domestic dispute, asked the defendant about needle marks on his arm). That

principle holds true even when an officer reveals his suspicions of criminal activity after conveying to a defendant that he is not free to leave. In *State v. Prickett*, 324 Or 489, 491, 930 P2d 221 (1997), for example, an officer's request that the defendant perform field sobriety tests during a lawful traffic stop did not result in compelling circumstances, even though the officer's request made it apparent to the defendant that the officer thought he had committed the crime of driving under the influence of intoxicants. *See Shaff*, 343 Or at 649 (explaining that, in *Prickett*, the officer's request was one "from which the defendant reasonably could have inferred that the officer suspected he had been driving while impaired"). Indeed, *Prickett* illustrates the general rule that "[o]fficer questioning during an 'investigatory detention' or routine traffic stop ordinarily does not create compelling circumstances that would require *Miranda* warnings." *State v. Schwerbel*, 233 Or App 391, 395, 226 P3d 100, *rev den*, 349 Or 172 (2010); *see Prickett*, 324 Or at 495 ("Article I, section 12, does not require an officer to give *Miranda*-like warnings before questioning a person who is stopped for a traffic infraction, because that person is neither in custody nor under compulsion in the constitutional sense." (citing *State v. Vu*, 307 Or 419, 425, 770 P2d 577 (1989))). Ultimately, "what matters is not whether evidence of guilt was apparent to the suspect; rather, it is whether the officers used that evidence in a coercive manner." *Shaff*, 343 Or at 650.

We encountered that kind of coercive police conduct in *State v. McMillan*, 184 Or App 63, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003), and *Schwerbel*. In *McMillan*, an officer stopped the defendant's car as part of a prostitution investigation, he told the defendant that another officer was going to "make a decision as to whether or not [the defendant was] going to jail," and he confronted the defendant with a woman's statement that the defendant had agreed to sex for money. 184 Or App at 68-69 (internal quotation marks omitted). Similarly, in *Schwerbel*, an officer stopped the defendant's car for a traffic violation, ordered him out of the car after discovering his license was suspended, and then told him that he "was going to be detained, as it was a crime for [defendant] to drive." 233 Or App at 397

(internal quotation marks omitted; brackets in original). In both cases, we reasoned that the defendant was in compelling circumstances because, beyond the ordinary pressures inherent in an investigatory stop, the officers had communicated that they believed each defendant had committed a crime, that they had probable cause to arrest, and that they intended to make an arrest or were strongly weighing the possibility of making an arrest. *See McMillan*, 184 Or App at 68-69; *Schwerbel*, 233 Or App at 397-98.

The coercive interrogation practices described in cases like *McMillan* and *Schwerbel* plainly were not present in this case. The officer's single, open-ended question here was neither coercive nor based on an assumption of defendant's guilt, even if it suggested that the officer suspected that defendant might be in possession of an unlawful item. Further, the circumstances did not become compelling once defendant admitted that he was in possession of marijuana. Defendant cites no authority for the odd proposition that a defendant's admission of guilt alone makes the circumstances compelling—*i.e.*, it creates the kind of police-dominated atmosphere that *Miranda* warnings are intended to counteract—when that admission is offered in response to a question an officer was free to ask without giving *Miranda* warnings.

Beyond that conclusion, one additional aspect of the interaction here requires discussion. Thus far, we have focused on the possible coercive effect of the officer's questions during the detention, but we have not examined the officer's earlier statements that gave rise to that detention, other than observing that defendant was not free to leave. Here, before questioning defendant, the officer told him that he would be handcuffed and transported to a detoxification center. To be sure, a detainee's awareness—before he is ever questioned—that he will be handcuffed and transported in a police car is not a typical aspect of the police-citizen encounters that we have addressed under Article I, section 12. The question that remains, then, is whether the officer's communication that defendant would be handcuffed and transported to a detoxification center, together with subsequent questions that hinted at suspicion of illegal behavior, created the kind of police-dominated atmosphere that

*Miranda* warnings were intended to counteract. For at least three reasons, we conclude that it did not.

First, when the officer told defendant that he would be subject to future detention, the officer made clear that that detention was for the purpose of transporting defendant to the detoxification center, not because defendant had committed a crime. The cases we have discussed above illustrate that, once an officer ties a detainee's criminal acts to an impending arrest, the officer exerts pressure on the detainee to respond to further questioning. *See McMillan*, 184 Or App at 68-69; *Schwerbel*, 233 Or App at 397-98. In this case, by contrast, the officer informed defendant that his detention was necessary so that his condition could be monitored at a detoxification center; the officer did not use the threat of a future detention in a coercive way by connecting it to his belief that defendant had committed a crime.

Second, the detention in this case was more like a temporary detention associated with an ordinary traffic or investigatory stop than an open-ended, police-dominated interrogation that triggers the need for *Miranda* warnings. Ordinarily, traffic stops and on-the-street investigatory stops are not sufficiently compelling to require *Miranda* warnings because those stops "are typically relatively brief, and the public nature of the stop does not make a suspect feel as though he or she is completely at the mercy of the police." *McMillan*, 184 Or App at 67 (internal quotation marks omitted); *see also Berkemer v. McCarty*, 468 US 420, 437-38, 104 S Ct 3138, 82 L Ed 2d 317 (1984) (holding, under Fifth Amendment, that "ordinary traffic stop" did not amount to custodial interrogation, as described in *Miranda*, in part because the motorist would expect that he would be held temporarily and "in the end *** most likely will be allowed to continue on his way," whereas a detainee held during a stationhouse interrogation "often is aware that questioning will continue until he provides his interrogators the answers they seek"). Likewise, here, defendant could appreciate that he would be held for as long as it took to get to the detoxification center, at which point he would be free from the officer's control. And, as with a typical investigatory stop, the questioning occurred while defendant was subject to public view.

Third, although we have recognized that a heightened degree of confinement—*i.e.*, the use of handcuffs or placement in a patrol car—is a relevant consideration in determining whether a person was in compelling circumstances, *State v. Bush*, 203 Or App 605, 610, 126 P3d 705 (2006), here, at the time of the questioning, that heightened confinement was only prospective. Although defendant was told that he *would be* handcuffed and taken to the detoxification center, he was questioned in the parking lot, where the officer allowed him to smoke a cigarette. Those circumstances do not present the police-dominated atmosphere that might be associated with greater levels of confinement, even if Article I, section 12, might apply differently to police questioning at other points of a detoxification hold. *See, e.g., State v. Lloyd*, 22 Or App 254, 257, 267-69, 538 P2d 1278 (1975) (concluding that *Miranda* warnings were required because the defendant, who had been found in a parking lot near the scene of a fire, was "in custody" when he was taken to the jail as a "friendly drunk," told that he would be held there for six hours, and later questioned about why he was at the scene of the fire).

In sum, because the officer's question merely suggested that defendant might be in possession of an unlawful item and did not assume defendant's guilt or even connect defendant with any evidence of a specific crime, the circumstances were not compelling when the officer asked defendant if he had anything that he was not supposed to have or when defendant responded that he had marijuana. That conclusion holds even though defendant had earlier been told that he would be transported in handcuffs to a detoxification center. At the time he was questioned, defendant was not actually placed in handcuffs or put in a patrol car, and the officer made clear that that future detention was the result of a detoxification hold, not because defendant had committed—or was suspected of committing—a crime. Accordingly, defendant was not in compelling circumstances, *Miranda* warnings were not required, and the trial court did not err in denying defendant's motion to suppress.

Affirmed.