Submitted November 25, 2015, affirmed May 10, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DARIN LANE NELSON,
*Defendant-Appellant.*

Jefferson County Circuit Court
13CR04800; A156962

397 P3d 536

Peter Gartlan, Chief Defender, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan Yorke, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Hadlock, Chief Judge, and Lagesen, Judge.

## ORTEGA, P. J.

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), in violation of ORS 813.010. He assigns error to the trial court's denial of his motion to suppress, in which he argued that statements he made before his arrest occurred under compelling circumstances that required warnings under *Miranda v. Arizona*, 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966). Among other reasons, defendant asserts, as he did below, that because the investigating officer told him that he was not free to leave and his movements were restricted, and because the officer told him that he was too impaired to drive, his statements were elicited in violation of Article I, section 12, of the Oregon Constitution, which provides that no person "shall be * * * compelled in any criminal prosecution to testify against himself."[1] Reviewing the denial of the motion to suppress for legal error, *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990), we conclude that the circumstances preceding defendant's arrest were not compelling and, therefore, the trial court did not err. We affirm.

We recount the facts consistently with the trial court's factual findings and its decision denying defendant's motion to suppress. *State v. Shaff*, 343 Or 639, 641, 175 P3d 454 (2007). Shortly before 10:40 p.m., Deputy Larson was patrolling the streets of Culver when he noticed a red Toyota pickup truck with a white taillight, which is a traffic violation. The deputy caught up to the truck and then turned on the patrol car's overhead lights.[2] Soon after, the truck pulled into a driveway, which Larson later learned was the driveway of defendant's home. Larson angled his patrol car at the edge of the driveway, just off the road. The driver—defendant—started getting out of the truck, and Larson

---

[1] Defendant also argues that the deputy's observations of defendant's performance on the field sobriety tests and the results of the Intoxilyzer test should be suppressed because they derived from the Article I, section 12, violation. Because we conclude that defendant's statements were not made under compelling circumstances, we reject defendant's argument as to that evidence.

[2] The state asserts that the overhead lights were only activated "briefly." The trial court did not so find, and the record does not indicate whether the lights remained on or off during the encounter. In any event, defendant does not posit that the lights contributed to the circumstances that he contends were compelling.

got out of his patrol car and asked defendant to stay in his truck so that Larson could issue a traffic citation for the taillight; it was routine for Larson to ask a driver to remain in a vehicle during a traffic stop because of officer safety concerns. Defendant put one foot on the ground, and Larson again asked him to remain in the truck. Defendant did not comply with Larson's request but, when Larson approached the truck and asked defendant a couple more times to stay inside, defendant complied by sitting in the driver's seat and shutting the truck door.

Larson saw that defendant's eyes were glassy and bloodshot and that his movements were slow and deliberate, and he could smell a strong odor of alcohol coming from the truck. After Larson informed defendant of the reason for the stop—the white taillight—defendant explained why the taillight was broken, and Larson could smell alcohol on defendant's breath. As defendant reached for his driver's license, registration, and proof of insurance, Larson continued to notice defendant's slow and deliberate movements and that defendant had to focus and concentrate to cooperate with the stop. At that point, Larson told defendant of his belief that defendant was "too impaired to have been driving." Defendant responded that he was "buzzed."

Larson returned to his patrol car to run defendant's information and then resumed talking to defendant, who at some point got out of the truck. Larson observed that defendant appeared frustrated and angry. Defendant asked Larson if he was going to arrest him, and Larson replied:

"Well, I have a process to go through. This is an investigation. I'm not going to make a determination just now. I'd like to finish the investigation first."

When defendant tried to walk past Larson, Larson reached out and put his hand on defendant's shoulder for about one second, just strong enough to stop defendant's progress to the point where defendant could finish his step, and then brought his hand back. As he did so, Larson gently told defendant, "Stay right here. You're not free to leave yet." Larson then backed off to a safe distance and informed defendant, "You're not free to go yet."

Defendant asked Larson whether he was "going to give a guy that makes ten bucks an hour a ticket and destroy my life right now?" Larson proceeded with his investigation, reminding defendant of the reason why he was stopped and restating that he thought defendant was too impaired to be driving before asking defendant for his consent to take field sobriety tests (FSTs). Larson asked defendant to walk to his patrol car. After Larson saw that defendant had difficulty maintaining his balance while walking, Larson asked questions related to the DUII investigation. As Larson asked his questions, defendant let Larson know that he had difficulties with hearing and balance, along with other physical limitations. During the course of that questioning, defendant admitted that he had driven the truck home from the Round Butte Inn, a local restaurant and bar; that he had "[come] up the back way" because "he had too much to drink"—two rum-and-cokes and three beers—from about 6:00 p.m. to 10:30 p.m.; and that he felt "buzzed—I'm impaired tonight. This is not my norm."

Larson administered the Horizontal Gaze Nystagmus test, and defendant exhibited four of the six "clues" of intoxication.[3] Larson then questioned defendant about his drinking habits. At one point, defendant said, "I'm impaired tonight. I'm not going to bullshit you. You can give me a ticket. I'm not the bad guy." In the course of Larson administering more FSTs, which defendant could not complete, defendant said, unprompted, that he thought he would "blow a one, one-something tonight." Larson said that he believed that defendant's blood alcohol content (BAC) would be "about a .13," to which defendant responded, "You could be close." At about 11:11 p.m., defendant said again that he was "impaired," and Larson agreed and informed defendant that he was under arrest for DUII. On the way to the jail, Larson read defendant his *Miranda* rights, and, at the jail, defendant was given an Intoxilyzer test. His BAC was 0.10.

Defendant was charged with one count of DUII and, before trial, moved to suppress the statements he made to

---

[3] Those clues are signs of intoxication and include, as an example, a lack of smooth pursuit when the eye follows the movement of a pen from side to side. *State v. Bevan*, 235 Or App 533, 536 n 2, 233 P3d 819 (2010). A person fails the test if four clues out of six are observed by the investigating officer. *Id.* at 536.

Larson before *Miranda* warnings were administered, as well as Larson's FST observations and the Intoxilyzer results. In denying the motion, the trial court reasoned that the following facts supported its conclusion that the circumstances were not compelling: (1) Larson was on defendant's property, a location familiar to defendant; (2) Larson's initial request to defendant to remain in his car was for officer safety reasons; (3) after Larson smelled the strong odor of alcohol, he did not "expressly confront defendant with incriminating evidence other than to comment that he believed the defendant was too impaired to be driving," to which defendant responded that he was "buzzed"; (4) defendant was not restrained at any point and was not pushed forcefully by Larson, but was stopped "from walking away from the investigation"; (5) Larson was alone and never requested backup; (6) the duration of the encounter before defendant was arrested was about 32 minutes, Larson did not ask any questions other than to establish probable cause, and his questions were typical of a DUII investigation; (7) defendant was not free to leave, but the stop "was no more coercive or lengthy than a typical DUII investigation"; and (8) there was no evidence that Larson's manner or requests were threatening or coercive. Following the court's denial of defendant's motion, he entered a conditional guilty plea, reserving his right to challenge the denial on appeal.

Defendant appeals that ruling and, thus, we turn to the issue of whether the circumstances in which he made the challenged statements were sufficiently compelling to require *Miranda* warnings. Article I, section 12, provides that no person "shall be * * * compelled in any criminal prosecution to testify against himself." In the context of a police encounter with a suspect, that constitutional right against self-incrimination requires an officer to provide *Miranda* warnings before interrogating the suspect when the suspect is in full custody, or also in circumstances that create "a setting which judges would and officers should recognize to be 'compelling,'" *i.e.*, compelling circumstances. *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987). Here, when defendant made the statements he sought to have suppressed, he had not been arrested and was, therefore, not in "full custody," *see State v. Warner*, 181 Or App 622, 628, 47

P3d 497, *rev den,* 335 Or 42 (2002); rather, his assertion is that *Miranda* warnings were required because the circumstances before his arrest were compelling.

The "question whether the circumstances were compelling does not turn on either the officer's or the suspect's subjective belief or intent; rather, it turns on how a reasonable person in the suspect's position would have understood his or her situation." *Shaff,* 343 Or at 645. The Supreme Court has set out a number of factors that a court may consider when determining whether circumstances were compelling:

> "In deciding whether a defendant's encounter with police officers has so evolved, this court has considered a host of factors, including: (1) the location of the encounter, *Smith,* 310 Or at 7 (concluding that circumstances were not compelling, in .part, because detective met with defendant in noncustodial facility 'in surroundings relatively familiar to defendant'); (2) the length of the encounter, *State v. Prickett,* 324 Or 489, 495, 930 P2d 221 (1997) (concluding that circumstances were not compelling, in part, because '[t]he stop as a whole, and the questions, were brief'); (3) the amount of pressure exerted on the defendant, *State v. Carlson,* 311 Or 201, 205, 808 P2d 1002 (1991) (concluding that circumstances were not compelling, in part, because there was no evidence that 'police coerced or pressured defendant to answer questions'); and (4) the defendant's ability to terminate the encounter, *Magee,* 304 Or at 265."

*State v. Roble-Baker,* 340 Or 631, 640-41, 136 P3d 22 (2006). The factors are neither exclusive nor are they applied mechanically. *Id.* at 641. "Rather, in determining whether the police placed a defendant in compelling circumstances, this court will consider all the circumstances, and its overarching inquiry is whether the officers created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract." *Id.*

It is worth emphasizing that Oregon appellate courts have held that *Miranda* warnings are not, as a matter of course, required upon initiating a traffic stop or an investigation of a possible crime. An investigatory detention does not usually create compelling circumstances. *State v. Nevel,* 126 Or App 270, 276, 868 P2d 1338 (1994) (concluding

that an investigatory detention that was not unnecessarily obtrusive, where no *Miranda* warnings were provided, did not violate Article I, section 12). Moreover, investigations conducted in surroundings familiar to a suspect are less likely to be compelling. *Shaff*, 343 Or at 646 ("[T]he fact that the interview occurs in familiar surroundings diminishes the police-dominated atmosphere that *Miranda* warning were intended to counteract."). Nor are routine traffic stops alone sufficiently compelling to require *Miranda* warnings. *State v. McMillan*, 184 Or App 63, 67, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003) (citing *Prickett*, 324 Or at 494). That is so even if the person questioned does not feel free to go, so long as the traffic stop is no more lengthy or coercive than is typical. *Shaff*, 343 Or at 647; *Nevel*, 126 Or App at 276. Further, questioning a person suspected of a crime "does not inherently create a compelling setting for Oregon constitutional purposes." *Carlson*, 311 Or at 205 (internal quotation marks omitted). "That principle holds true even when an officer reveals his suspicions of criminal activity after conveying to a defendant that he is not free to leave." *State v. Stone*, 269 Or App 745, 751-52, 346 P3d 595 (2015).

There are circumstances, however, when a traffic stop or an investigation edges over the line between a routine stop or an investigatory detention and circumstances compelling enough to require *Miranda* warnings. One such circumstance is "expressly confronting a suspect with evidence of probable cause to arrest." *McMillan*, 184 Or App at 68 (in an arrest for prostitution, an officer confronted defendant with his observations of possible sexual activity and the prostitute's statements that she had sex with defendant for money); *see also State v. Werowinski*, 179 Or App 522, 532, 40 P3d 545, *rev den*, 334 Or 632 (2002) (the officer "confronted defendant with statements of other combatants and witnesses that incriminated defendant and asked him whether they were true"). However, when it comes to confronting a defendant with evidence of probable cause to arrest, what matters is whether police use that evidence in a coercive manner. *Shaff*, 343 Or at 650.

Another such circumstance is a "heightened degree of confinement," where placing a suspect in an enclosed

space or restricting his or her movements can create a compelling setting. *Stone*, 269 Or App at 755. For example, in *Werowinski*, the officer directed defendant to enter and remain in a locked patrol car for 10 to 15 minutes and, when the officer returned, blocked the defendant from leaving the patrol car. 179 Or App at 532. In *McMillan*, the defendant was supervised closely by the officer during the stop and prevented from using his cell phone. 184 Or App at 68. Further, in *State v. Schwerbel*, 233 Or App 391, 397, 226 P3d 100, *rev den*, 349 Or 172 (2010), the officer during a traffic stop ordered the defendant out of his car before asking him whether there was anything on defendant's person or in the car that he needed to be aware of. In each case, the restriction of the defendant's movements contributed to the totality of circumstances that were compelling enough to require *Miranda* warnings.

Defendant advances several reasons why the detention went beyond a routine investigatory detention. He argues that his movement was significantly restricted because Larson informed defendant that he was not free to leave, asked defendant to remain in his truck, stopped defendant's movement when he attempted to go into his house, and asked defendant to walk to the patrol car. Defendant also stresses Larson's statement of his belief that defendant was too impaired to drive. In defendant's view, the statement "effectively informed defendant that Larson had probable cause to arrest him" for DUII. Defendant also asserts that the duration of the encounter—32 minutes—was a "considerable length of time."[4]

We first point out two salient circumstances of Larson's traffic stop and DUII investigation. First, the stop occurred in the familiar setting of defendant's driveway. *See*

_____

[4] Defendant also argues that Larson "interrogated" defendant when he asked him questions about his alcohol consumption, citing *State v. Scott*, 343 Or 195, 166 P3d 528 (2007). *Scott*, however, decided the issue of whether a defendant's Article I, section 12, rights against self-incrimination were violated during a custodial interview after defendant invoked his right to counsel but the investigating officer continued to pose questions to the defendant. *Id.* at 201-02. That case did not concern the compelling circumstances of a traffic investigation, for which the relevant inquiry of an officer's questions is whether they can be reasonably understood as contributing to a "police-dominated atmosphere that *Miranda* warnings were intended to counteract." *Roble-Baker*, 340 Or at 641.

*Roble-Baker*, 340 Or at 640 (a factor of compelling circumstances is the location of the encounter). "That fact reduces significantly the likelihood that the circumstances were inherently compelling for purposes of the Article I, section 12, analysis." *State v. Turnidge (S059155)*, 359 Or 364, 402, 374 P3d 853 (2016) (encounter with police occurred in front of defendant's home and driveway). Second, the stop was not unnecessarily prolonged. *See Roble-Baker*, 340 Or at 640 (another factor is the encounter's length). Although 32 minutes is longer than the 10- to 15-minute confinement experienced by the defendant in *Werowinski*, here the record supports the trial court's conclusion that the investigatory detention was not atypically long. Larson administered several FSTs, and defendant, at several points, initiated conversation with the deputy. "The significance of the length of detention varies depending on the other surrounding circumstances." *Werowinski*, 179 Or App at 530.

Further, Larson's restrictions on defendant's movements were necessary to carry out the stop and the investigation. A minimal level of restraint alone is not sufficient to make the circumstances of a detention compelling. *See Shaff*, 343 Or at 647 (noting that, although defendant was not free to leave, the absence of physical restraint in the encounter was a "minimal level of restraint" and, thus, not compelling). Here, at the beginning of the encounter, Larson asked defendant to remain in his truck, a request that was temporary and was routinely made by Larson for officer safety reasons. Larson's physical contact with defendant was momentary and just sufficient to stop defendant's progress toward the house before Larson explained that defendant was not free to leave. As noted, preventing a suspect from leaving an investigation or a traffic stop is not ordinarily a compelling circumstance, unless the stop is coercive or unusually lengthy. *Id.* And, Larson's request to defendant to walk to the patrol car was part of the DUII investigation.

As for Larson's statement to defendant that he believed that defendant was too impaired to be driving, we observe that Larson did not confront defendant with *circumstantial or testimonial evidence* that would alert defendant that Larson had probable cause for a DUII arrest. Rather, in this case, Larson initially informed defendant of the taillight

violation and, when it became apparent to Larson that defendant had been drinking, the deputy let defendant know that what began as a minor traffic violation stop was shifting to a DUII investigation. Indeed, when defendant asked Larson if he was going to arrest him, Larson replied that he had "a process to go through. This is an investigation. *I'm not going to make a determination just now.* I'd like to finish the investigation first."[5] We also note that the record supports the trial court's findings that Larson's statement was not a threat and was not made in a coercive manner. Larson's statement that he believed that defendant was impaired would not be understood by a reasonable person to be pressure on defendant to answer questions. *See Roble-Baker*, 340 Or at 640-41 (pressure exerted on defendant a factor to be considered in compelling circumstances determination (citing *Carlson*, 311 Or at 205)).

Accordingly, we hold that the circumstances were not sufficiently compelling to require *Miranda* warnings, and, thus, the trial court did not err in denying defendant's motion to suppress.

Affirmed.

---

[5] Defendant contends that the trial court's finding that Larson did not communicate an intention to arrest defendant was contrary to Larson's testimony. That is, at the hearing, Larson testified that, at the beginning of the stop when he informed defendant of his belief that defendant was impaired, Larson believed that he had conveyed to defendant that he was going to be arrested. However, Larson's express statement to defendant that he was 'not going to make a determination [of whether to arrest defendant] just now' is sufficient evidence to support the trial court's finding that Larson did not communicate to defendant that he was going to arrest him.