No. 662          July 23, 2025          145

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENDRA FAYE LARSON,
*Defendant-Appellant.*

Douglas County Circuit Court
23CR15856; A183046

Steve H. Hoddle, Judge.

Submitted June 24, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kyle Krohn, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant appeals a judgment of conviction for ten counts of second-degree animal neglect, ORS 167.325. In one assignment of error, she argues that the trial court erred by denying her motion to suppress statements she made before she received *Miranda* warnings and statements she made after she was *Mirandized*. We affirm.

Officers responded to a call about an "odor of death" coming from a trailer parked in a store parking lot. They confirmed the presence of the odor and entered the trailer to find a deceased dog and multiple other dogs in "[v]ery poor" condition. Officers began removing the dogs from the trailer.

Defendant arrived at the scene at some point when the dogs were being removed. Upon her arrival, defendant had a one-to-two-minute encounter with officers:

"[FIRST OFFICER]:   Is this your RV?

"[DEFENDANT]:   Yeah.

"[FIRST OFFICER]:   Did you park it here?

"[DEFENDANT]:   Yeah.

"[FIRST OFFICER]:   Okay. You're gonna want to talk to that deputy right there."

"[SECOND OFFICER]:   Hey there.

"[SECOND OFFICER]:   (Inaudible.)

"[SECOND OFFICER]:   Okay. I'm Deputy Atterbury with the Sheriff's Office. Just so you know, I'm recording. Okay.

"[DEFENDANT]:   Yes, sir.

"[SECOND OFFICER]:   So the reason we're here today is because we [got] a call about this trailer. Okay. We show up and can smell an obvious smell of death. Okay.

"[DEFENDANT]:   It's, it's been two days since I've been able to clean any of the kennels.

"[SECOND OFFICER]:   Okay. What about the dead dog?

"[DEFENDANT]:   What dead dog?

"[SECOND OFFICER]:   One of your dogs is deceased. So when was the last time you were here with this trailer?

"[DEFENDANT]:   Last night. And I got off work around midnight and came over and fed everybody.

"(Brief pause.)

"[SECOND OFFICER]:   Alright. Real quick. Before I ask any more questions I'm just gonna advise you of your rights."

Defendant was read her *Miranda* rights, and she confirmed that she understood them. Officers continued questioning defendant about the contents of the trailer, and defendant answered with detailed responses, providing in-depth information about the trailer, the dogs, and the last time she provided care to the dogs.

At trial, defendant filed a motion to suppress all evidence obtained in the search and seizure and later amended it to include statements she made before and after she was *Mirandized*. The trial court denied the motion as to the evidence at issue in this case.

In one assignment of error, defendant argues that the trial court erred by denying her motion to suppress statements she made before she received *Miranda* warnings because the encounter with officers constituted compelling circumstances and required *Miranda* warnings under Article I, section 12, of the Oregon Constitution, and that statements she made after she was *Mirandized* violated her right to remain silent. "We review the trial court's denial of a motion to suppress statements for legal error." *State v. Nieman*, 242 Or App 269, 274, 256 P3d 126, *rev den*, 350 Or 571 (2011). "We are bound by the trial court's historical findings of fact if there is evidence in the record to support them." *Id*.

The right against compelled self-incrimination is constitutionally guaranteed in Article I, section 12, of the Oregon Constitution, which states in relevant part, "[n]o person shall be *** compelled in any criminal prosecution to testify against himself." As part of this constitutional guarantee, officers must give *Miranda* warnings before questioning "a person who is in full custody or in circumstances that create

a setting which judges would and officers should recognize to be compelling." *State v. Shaff*, 343 Or 639, 645, 175 P3d 454 (2007) (internal quotation marks and citations omitted). The question of whether compelling circumstances existed is decided based on how a reasonable person in the defendant's position would have understood the encounter. *Id.* In undertaking that inquiry, we consider four factors: "(1) the location of the encounter, (2) the length of the encounter, (3) the amount of pressure exerted on the defendant, and (4) the defendant's ability to terminate the encounter." *Id.* (internal citations omitted); *see also State v. Stone*, 269 Or App 745, 750, 346 P3d 595 (2015) (same).

These factors are neither exclusive nor mechanically applied. *State v. Roble-Baker*, 340 Or 631, 641, 136 P3d 22 (2006). When applying those factors, the court reviews all the circumstances of the encounter to consider, "whether the officers created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract." *Id.* Recently, this court upheld the principle that, "neither a traffic stop nor questioning someone suspected of a crime, without more, creates the kind of compelling circumstances that require *Miranda* warnings." *State ex rel City of Pendleton*, 338 Or App 85, 88-89, 565 P3d 80, *rev den*, 373 Or 815 (2025).

## I.   PRE-MIRANDA STATEMENTS

Defendant argues that the encounter gave rise to compelling circumstances because she was in a police-dominated atmosphere and her liberty was restrained. The state responds that the encounter did not give rise to compelling circumstances because it resembled a traffic stop or other routine investigatory detention.

## A.   *Location of the Encounter*

Both parties analogize the store parking lot to a traffic stop location. Defendant argues that although questionings during a traffic stop normally do not give rise to compelling circumstances, they can occasionally arise in that context. *See State v. Schwerbel*, 233 Or App 391, 393, 396-99, 226 P3d 100, *rev den*, 349 Or 172 (2010) (determining that compelling circumstances existed during a traffic stop in a motel parking lot).

The state responds that the store parking lot was a public place and that questioning during a traffic stop in a public space can offset other factors that give rise to compelling circumstances. *See State v. Prickett*, 324 Or 489, 495-96, 930 P2d 221 (1997) (determining that compelling circumstances did not exist during a traffic stop on a public highway).

Here, the location of the encounter—a store parking lot—weighs against a determination of compelling circumstances. *See Schwerbel*, 233 Or App at 397 (concluding that a motel parking lot location weighed against a compelling circumstance determination). Of course, as defendant points out, the location alone is not determinative, and in conducting our inquiry the location of the encounter must be considered in conjunction with the other factors. *See id.* at 397-99 (pressure exerted on the defendant and the ability of the defendant to terminate the encounter were more important than the location in determining whether circumstances were compelling); *Prickett*, 324 Or at 495-96 (considering length of the encounter coupled with absence of coercion or threat by the officer to the defendant along with location in compelling circumstance determination). Thus, we now turn to those other factors.

B.  *Length of the Encounter*

Neither party disputes that the conversation was short, lasting one-to-two minutes. Short encounters weigh against a determination of compelling circumstances. *See Schwerbel*, 233 Or App at 397 (a 15-minute traffic stop weighed against a determination of compelling circumstances); *see State v. Nelson*, 285 Or App 345, 353, 397 P3d 536 (2017) (a 32-minute traffic stop was not an atypical length for a detention and that it weighed against a determination of compelling circumstances); *see also State v. Moore*, 229 Or App 255, 262, 211 P3d 344 (2009), *aff'd sub nom State v. Moore/Coen*, 349 Or 371, 245 P3d 101 (2010), *cert den*, 563 US 996 (2011) (a short encounter was the only factor that weighed against a determination of compelling circumstances).

The one-to-two minute conversation was short and weighs against a determination of compelling circumstances. Therefore, the length of the encounter supports the trial court's determination of no compelling circumstances.

C.    *Pressure Exerted on Defendant*

Defendant argues that she was in a police-dominated atmosphere where uniformed officers and vehicles were present and actively searching her trailer and removing her dogs. She argues that the second officer "exerted a significant amount of pressure on [her]," *Schwerbel*, 233 Or App at 397-98, when he immediately approached her with criminal evidence and allegations about the call officers received, the "obvious smell of death," and "the dead dog." She contends that officers did not express to her that she was being investigated for a non-criminal infraction and instead confronted her with specific evidence of her criminal culpability. *Cf. Nelson*, 285 Or App at 353-54 (determining compelling pressure was not exerted on the defendant when the officer expressed to him that the traffic stop was transitioning to a DUII investigation).

The state responds that the encounter was the functional equivalent of an investigatory detention and was not atypical for a minimal detention because neither officer made threats, accused defendant of a crime, or touched defendant while they were performing a community caretaking function. The state asserts that, because the second officer explained to defendant why officers were called and subsequently asked non-interrogative, investigatory questions about her knowledge of and connection to the trailer, the encounter resembled the routine and salutatory practice of informing a defendant of the reason why they are being detained. *See State v. Schmidtke*, 290 Or App 880, 886, 417 P3d 563 (2018) (determining that "merely informing [the] defendant of the criminal activity for which the officer was investigating and detaining [the] defendant" did not create compelling circumstances because it was a routine part of the detention procedure and was not made to prompt an incriminating response from the defendant). The state concedes that there are times when a traffic stop or other investigatory detention can give rise to compelling circumstances,

but it asserts that this encounter presents no such case. *See Nelson*, 285 Or App at 351-52 (describing that the threshold can be crossed when (1) a suspect is brought evidence of probable cause for their arrest in a coercive manner, or (2) a suspect is placed under a "heightened degree of confinement" where they are "in an enclosed space or restricting his or her movements").

The pressure exerted on defendant was minimal and weighs against a determination of compelling circumstances because although defendant was in a stressful environment, the encounter resembled a routine detention practice as evidenced by the fact defendant was informed by officers why they were at the trailer before she was asked questions about her connection to the trailer. *See Schmidtke*, 290 Or App at 886.

We note that the trial court found that some questions were asked in an authoritative manner based on review of body cam footage, however, those statements were presented as part of the routine detention practice and served an investigatory purpose of identifying defendant's knowledge of the trailer and its contents. Therefore, defendant's reliance on *Schwerbel* is unpersuasive because defendant was not confronted in a coercive manner with evidence of the crime officers were investigating. *See Schwerbel*, 233 Or App at 397-98 (determining officer statements "exerted a significant amount of pressure on" the defendant to answer questions because the defendant knew the officer was going to detain him after the officer informed him that he committed a crime and gathered evidence for an arrest). Alternatively, defendant's reliance on *Nelson* does not support her argument because although she was not explicitly notified of the investigatory shift, she was read her *Miranda* rights once officers confirmed that defendant had knowledge of the trailer's contents which is similar to the officer in *Nelson* who was found not to have exerted pressure on the defendant when the officer gathered independent information about the defendant's sobriety and expressed to the defendant that the traffic stop was transitioning to a DUII investigation. *Nelson*, 285 Or App at 353-54. Therefore, this

factor supports the trial court's determination of no compelling circumstances.

D.   *Ability to Terminate the Encounter*

Defendant argues that her liberty was restrained when she was told by an officer that she was "gonna want to talk to" another officer and that the request was an unusual demand in a criminal investigation rather than an ordinary procedure in a traffic stop. *Cf. id.* at 346-47 (observing that it is "routine" for an officer to ask a driver to remain in a vehicle during a traffic stop). Viewed together with the police-dominated atmosphere, she argues that she would reasonably understand that she was required to remain at the scene, cooperate with officers, and answer their questions. Additionally, she argues that she was not, "*at that point in time*, free to end the encounter," but rather that she was to be questioned before officers would let her leave. *Moore*, 229 Or App at 262 (emphasis in original).

The states responds that although defendant may not have felt free to leave and was asked questions that were relevant to criminal liability, nothing before the reading of her *Miranda* rights made the encounter more compelling than a traffic stop or other investigatory detention. It argues that, like a traffic stop, the circumstances were not compelling, "even if the person questioned does not feel free to go, so long as the traffic stop is no more lengthy or coercive than is typical." *Nelson*, 285 Or App at 351.

The ability of defendant to terminate the encounter was not impeded and weighs against a determination of compelling circumstances because although she did not feel free to leave, she did not face the types of coercion or physical restraints that would impede her ability to end the encounter. Thus, defendant's reliance on *Moore* is unpersuasive because although defendant did not feel, "*at that point in time*, free to end the encounter," 229 Or App at 262 (emphasis in original), when she was told she was "gonna want to talk to" another officer, she misapplies her circumstances to the defendant in *Moore*. In *Moore*, the defendant's liberty was restrained when the defendant was handcuffed in the back of a police vehicle and questioned by officers.

*Id.* Unlike the defendant in *Moore*, defendant did not face the same or similar physical restraints that led the *Moore* court to determine that compelling circumstances existed. *Id.* Additionally, being told that she was "gonna want to talk to" another officer resembles a traffic stop request that is not coercive or unusually lengthy in nature. *See Nelson*, 285 Or App at 353 (the officer asking the defendant to temporarily remain in his vehicle, making momentary physical contact with the defendant to stop the defendant's physical movement in another direction, and requesting that the defendant walk towards the police vehicle were a routine part of the investigation and not the type of coercive or usually lengthy behavior that would restrain the defendant's liberty or give rise to compelling circumstances). Although it is understandable that defendant did not feel that she was free to leave, she does not explain how her liberty was restrained in a way similar to *Moore* or *Nelson*. Therefore, this factor supports the trial court's determination of no compelling circumstances.

In conclusion, the trial court did not err in denying defendant's motion to suppress statements she made before she received *Miranda* warnings.

## II.   POST-MIRANDA STATEMENTS

Defendant argues that because her pre-*Miranda* statements violated her right to remain silent, "the state has a heavy burden" to establish that defendant validly waived her rights by providing her post-*Miranda* statements. *State v. Ward*, 367 Or 188, 201, 475 P3d 420 (2020) (internal quotations marks and citations omitted). However, as explained above, the trial court did not err in denying defendant's motion to suppress statements she made before she received *Miranda* warnings. Therefore, her argument fails.

Affirmed.