No. 354 April 29, 2026 181

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACK WILLIAM MORAN, JR.,
*Defendant-Appellant.*

Harney County Circuit Court
21CR08560; A181045

Robert S. Raschio, Judge.

Submitted November 21, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Joel C. Duran, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII). In a single assignment of error, defendant argues that the trial court erred in denying in part his motion to suppress, contending that (1) he was interrogated under compelling circumstances; (2) his breath sample was derived from an Article I, section 12, violation; and (3) the state failed to prove that defendant voluntarily consented to a search of his breath. For the following reasons, we affirm.

We review the trial court's denial of a motion to suppress for legal error and are bound by the court's factual findings if there is constitutionally sufficient evidence to support them. *State v. DeJong*, 368 Or 640, 643, 497 P3d 710 (2021). Where the court did not make express findings, and there is evidence from which the court could have found a fact in more than one way, we presume that the court decided the facts consistently with its ultimate conclusion. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

Because the parties are familiar with the factual and procedural history, we do not provide a recitation of that background for this nonprecedential memorandum opinion and instead opt to provide a limited factual and procedural history pertinent to each of defendant's arguments.

On appeal, defendant first argues that statements that he made to the officer and the officer's testimony about defendant's performance on field sobriety tests (FSTs) should have been suppressed because he was interrogated in circumstances that were sufficiently compelling to require *Miranda* warnings. Article I, section 12, provides, in part, that no person "shall be *** compelled in any criminal prosecution to testify against himself." That constitutional right requires an officer to provide *Miranda* warnings before interrogating a suspect when the suspect is in full custody or is in "compelling circumstances." *State v. Nelson*, 285 Or App 345, 349, 397 P3d 536 (2017); *State v. Roble-Baker*, 340 Or 631, 640-41, 136 P3d 22 (2006) (outlining nonexclusive factors that a court may consider in determining whether circumstances are compelling, including the location and length of the encounter,

the amount of pressure exerted on the defendant, and the defendant's ability to terminate the encounter).

In defendant's view, the circumstances were compelling because Mitchell, an officer with the Hines Police Department, told defendant that he smelled alcohol coming from the vehicle and then asked defendant if he had been drinking; and after defendant admitted to having "a couple beers," the officer told defendant he had "some concerns" and asked him to perform FSTs. In our view, those circumstances were not compelling because the traffic stop and DUII investigation were not "more lengthy or coercive than is typical." *Nelson*, 285 Or App at 351 (concluding that the circumstances were not compelling during a 32-minute-long traffic stop where an officer told the defendant that he believed he was "too impaired to have been driving," told him he was not free to leave, and asked him to do FSTs).

Alternatively, defendant argues that *Nelson* and the Oregon Supreme Court cases on which it was based—*State v. Prickett*, 324 Or 489, 930 P2d 221 (1997); *State v. Vu*, 307 Or 419, 770 P2d 577 (1989); and *State v. Magee*, 304 Or 261, 744 P2d 250 (1987)—were incorrectly decided and should be overruled. With respect to the cases from the Oregon Supreme Court, we—as an intermediate appellate court—are bound by the precedent of the Supreme Court and are in no position to overrule that binding precedent. *State v. Portulano*, 320 Or App 335, 355, 514 P3d 93 (2022). As for *Nelson*, defendant has not persuaded us that it was "plainly wrong." *State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017) (explaining that overruling a prior decision requires a party to establish that the decision was plainly wrong, a "rigorous standard grounded in presumptive fidelity to *stare decisis*").

Defendant next argues that the trial court should have suppressed the results of a breath test that he took after his arrest because the state failed to show that that evidence was not derived from the officer's earlier violation of defendant's Article I, section 12 rights.[1] *See State*

---

[1] The trial court granted defendant's motion to suppress statements that he made to the officer after he performed poorly on the FSTs because those statements were made in compelling circumstances and, therefore, in violation of defendant's Article I, section 12, rights. The state does not challenge that ruling on appeal.

*v. Jarnagin*, 351 Or 703, 716, 277 P3d 535 (2012) (explaining that the remedy for an Article I, section 12, violation "extends not only to a defendant's unwarned responses to an officer's questions but also to *** evidence that is the product of that violation"); *State v. Swan*, 363 Or 121, 133, 420 P3d 9 (2018) (noting that the state bears the burden of showing that a defendant's decision to take a breath test was not derived from the officer's earlier violation of the defendant's Article I, section 12, rights).

We do not address that argument because we conclude that it was not preserved. *See, e.g.*, *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (outlining the preservation requirement); *State v. Walker*, 350 Or 540, 552, 258 P3d 1228 (2011) (explaining that one of the purposes of the preservation requirement is to ensure that the opposing party and the trial court were given enough information "to be able to understand the contention and to fairly respond to it"). Although defendant argued in his written motion to suppress that "any and all evidence," including "all derivative evidence" should be suppressed as a remedy for a *Miranda* violation, he did not refer specifically to the breath test in that context. Rather, he argued that "evidence of the FSTs should be suppressed" and reiterated at the hearing on the motion that his statements and the FSTs should be suppressed because he was not given *Miranda* warnings. Defendant's only argument as to why the breath test should be suppressed was that his consent was not voluntary. Taken together, those arguments did not give the state and the trial court the opportunity to address the specific legal issue that defendant now raises on appeal and did not foster full development of the record. *See State v. Roberts*, 291 Or App 124, 130, 418 P3d 41 (2018) (explaining that the purposes of the preservation requirement include (1) apprising the trial court of a party's position such that the court can consider and rule on the party's contention, (2) ensuring fairness to the opposing party by avoiding surprise and allowing that party to address all issues raised, and (3) fostering full development of the record).

Defendant also argues that the trial court erred by not suppressing the results of the breath test because

the state failed to show that his consent was voluntary. *See State v. Marshall*, 254 Or App 419, 427, 295 P3d 128 (2013) (explaining that, under Article I, section 9, of the Oregon Constitution, "a warrantless search is *per se* unreasonable, unless the search falls within an exception to the warrant requirement," such as consent, and noting that the state bears the burden of proving that the defendant's consent was voluntary); *State v. Banks*, 364 Or 332, 337, 434 P3d 361 (2019) (observing that the search of a suspect's breath is protected under Article I, section 9). In determining whether consent was voluntary, we "examine the totality of the facts and circumstances to see whether the consent was given by [the] defendant's free will or was the result of coercion, express or implied." *Marshall*, 254 Or App at 427 (internal quotation marks omitted).

Here, when Mitchell arrested defendant, they came to an agreement that defendant's SUV would not be towed and that his dog, who was in the SUV with defendant when he was stopped, would be taken by a Harney County deputy to the jail. In addition, before Mitchell transported defendant to the jail, he explained to defendant that it was standard practice not to hold someone on a DUII and that, "once [they] were finished," defendant would be released to a third party or given a ride home.

At the Harney County jail, defendant refused Mitchell's first request for breath samples and told Mitchell that he would not provide a breath test until he spoke to an attorney. Mitchell then told defendant that he would give him a telephone, a phone book, and privacy for about 20 minutes to contact an attorney. Defendant then asked Mitchell what the "fastest way to get out of here" was, and Mitchell responded that it would be to "just provide the two breath samples" and that, if defendant cooperated, Mitchell would give him a ride home with his dog. Defendant then agreed to provide the breath samples.

In defendant's view, his consent was not voluntary because it was "the product of Mitchell's promises to expeditiously release defendant, reunite him with his dog, and give him a ride home." Under the circumstances, we conclude that Mitchell's response to defendant's question did not

constitute the type of *quid pro quo* that critically impaired defendant's "capacity for self-determination" such that his consent was not voluntary. *See State v. Jordan*, 308 Or App 547, 555, 481 P3d 1017 (2021) (acknowledging that a "threat to do something that an officer has a legal right to do does not necessarily create a coercive atmosphere such to render subsequent consent to a search involuntary"); *cf. Marshall*, 254 Or App at 433 (concluding that, where an officer falsely promised immunity in exchange for the defendant's consent to search his RV, the "*quid pro quo* was apparent," and the defendant's "capacity for self-determination was critically impaired" such that his consent was not voluntary).

Affirmed.